J-S04031-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM DONALD LEIGH, | : | |
| | : | |
| Appellant | : | No. 351 WDA 2015 |

Appeal from the Judgment of Sentence November 21, 2014,
in the Court of Common Pleas of Blair County,
Criminal Division, at No(s): CP-07-CR-0000463-2014

BEFORE:   BOWES, OLSON, and STRASSBURGER, JJ.*

MEMORANDUM BY: STRASSBURGER, J.:       **FILED FEBRUARY 3, 2016**

William Donald Leigh (Appellant) appeals from the judgment of sentence entered after he was convicted of two counts each of involuntary deviate sexual intercourse with a child (IDSI) and attempted rape of a child, and one count each of rape of a child and aggravated indecent assault of a child.  We affirm.

This case arises from the sexual abuse perpetrated by Appellant on minor victim, J.G.  Appellant was the boyfriend of J.G.'s mother (Mother).[1] J.G. lived with Appellant, Mother, and Appellant's then-teenage daughter, Jasmine.[2]  According to J.G., when she was between the ages of five and

---

[1] J.G.'s biological father is P.G. (Father).

[2] Appellant and Mother began living together on February 1, 2010.

*Retired Senior Judge assigned to the Superior Court.

eight years old,[3] Appellant repeatedly attempted to engage and actually engaged in sexual acts with her. On May 11, 2013, J.G. spent the night at the home of her friend, Payge. J.G. told Payge that Appellant "had sex" with her. N.T., 8/7/2014, at 209. Payge reported this conversation to her mother, Tabitha, who then reported it to both Mother and Father's mother, Connie.[4] Connie reported it to police.

On March 28, 2014, Appellant was charged with numerous counts, including the aforementioned offenses, related to the sexual abuse of J.G. Appellant was tried before a jury on August 6 and 7, 2014. At trial, J.G. testified about the sexual acts performed on her throughout the years by Appellant. She testified that, when she and Appellant were home alone, he would carry her up to the bedroom and lay her on the bed, sometimes on her front and sometimes on her back. Appellant would stick "his privates" into her "butt and mouth … more than once."[5] N.T., 8/6/2014, at 59. She "told him to stop and he said he'll try but he never did." **Id**. She further testified that Appellant would spread her legs with his hands, his privates

---

[3] J.G. turned five in August 2009 and turned eight in August 2012.

[4] Tabitha and Father had an on-again-off-again relationship. On May 11, 2013, Father and Tabitha were not together. Father was dating Lindsay, who was employed as a stripper. Shortly after these allegations, Father and Tabitha resumed their relationship. At the time of trial, Father, Tabitha, Payge, and J.G. resided together.

[5] J.G. confirmed that what she called "privates" was Appellant's penis. N.T., 8/6/2014, at 64.

would be hard, and he tried to stick it in her "hole." *Id*. at 66. When Appellant put his privates in her mouth, "white stuff" that tasted "yucky" would come out. *Id*. at 70. She also testified that sometimes the white stuff would go on her stomach. *Id*. at 71. She indicated that when Appellant put her hand on his privates, white stuff would also come out. *Id*. at 73.

In addition to J.G.'s testimony, the Commonwealth presented the testimony of Mary Twomey, a nurse practitioner who specializes in the care of sexually-abused children. She examined J.G. on May 30, 2013 and found no evidence of sexual abuse. However, she testified that such a finding does not rule out sexual abuse because only "five percent of children that were sexually abused would have medical findings subsequent to their abuse." *Id*. at 129.

Additionally, the jury heard the testimony of Shannon Cossaboom, an expert in conducting forensic interviews on children where sexual abuse is suspected. She interviewed J.G. on May 30, 2013, and stated that J.G. "provide[d] details about the acts that occurred." *Id*. at 167. Moreover, that interview was recorded, and the jury watched the interview.

Appellant presented a defense that was premised on the theories that J.G. was not a credible witness and that Appellant was not home alone with J.G. for these events to actually happen. Mother testified in Appellant's defense that Appellant was never home alone with J.G. and that she

believed Father and Tabitha put J.G. up to this because Mother was requesting an increase in child support. Mother had just filed for that increase on April 17, 2013, a few weeks before the allegations came to light.

Connie also testified on Appellant's behalf. She testified that she "regret[s]" having called the police. N.T., 8/7/2014, at 15. Notably, she was Appellant's boss at his place of employment from January 2012 to March 2013. She testified that Appellant's job included being on-call as a driver twenty-four hours per day, that he worked every day, and that he was not home a lot due to his job. She stated that she no longer believed that this sexual abuse happened.

Appellant also presented the testimony of M.G. on his behalf to support the idea that Appellant was never home alone with J.G. M.G. is Father's sister as well as J.G.'s aunt. M.G. and her boyfriend lived with J.G., Appellant, Mother, and Jasmine from February 2010 to September 2011. Because M.G. was not employed, she picked J.G. up from school while Mother was at work. M.G. moved to Florida from September 2011 to early 2012, then moved back in with J.G. and her family and resumed her childcare responsibilities. M.G. also testified that she and Appellant were involved in a relationship when she was eighteen years old while she was living with Appellant, Mother, and J.G.

Furthermore, one of J.G.'s babysitters, Crystal, testified as to Appellant's lack of opportunity to have committed these crimes. Crystal's daughter and J.G. are the same age and are friends. From the summer of 2010 to the summer of 2011, Crystal picked J.G. up from school and J.G. stayed with her until Mother picked her up after work.

Appellant also testified. He testified about his extensive work hours and the fact that he could never have been in the house alone with J.G. for more than half an hour or forty-five minutes based on the number of people living there and his work schedule.

The jury found Appellant guilty on all charges. On November 21, 2014, the trial court conducted a sexually violent predator (SVP) classification hearing and sentencing hearing. The trial court classified Appellant as an SVP and sentenced him to an aggregate term of 25½ to 51 years of incarceration. On December 2, 2014, Appellant filed a post-sentence motion.[6] The trial court held a hearing on the post-sentence motion and issued its order denying and dismissing it on January 29, 2015. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

---

[6] Appellant acknowledges that his post-sentence motion was filed one day late; however, Appellant also filed a motion to accept the post-sentence motion *nunc pro tunc*. Appellant averred that he mailed the document to Blair County on November 29, 2014, but the document was not docketed until December 2, 2014. The Commonwealth did not oppose this motion, and the trial court granted it.

On appeal, Appellant sets forth five issues for our review, which we have renumbered for ease of disposition.

1. Was there insufficient evidence to conclude that [] Appellant had inappropriate sexual contact with J.G.?

2. Did the trial court err in denying Appellant's post[-]sentence motion because the jury's verdict against [] Appellant was so against the weight of the evidence as presented at trial so as to shock one's sense of justice?

[3.] Did the trial court err when it refused to give the prompt [complaint] jury instruction as stated in Pa. S.S.J.I. (Crim.) 4.13A?

[4.] Did the trial court err when it refused to grant a motion for mistrial when the Commonwealth improperly alluded to the fact that Appellant was incarcerated?

[5.] Did the trial court abuse its discretion by imposing an unduly harsh and unreasonable sentence because the trial court failed to consider Appellant's rehabilitative needs versus the public's safety?

Appellant's Brief at 8 (suggested answers and unnecessary capitalization omitted).

We first consider the sufficiency of the evidence to sustain Appellant's convictions and set forth our well-settled standard of review.

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a

defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Helsel***, 53 A.3d 906, 917-18 (Pa. Super. 2012)

(quoting ***Commonwealth v. Bricker***, 41 A.3d 872, 877 (Pa. Super. 2012)

(citations omitted)).

Instantly, Appellant does not challenge the specific elements of the crimes for which he was convicted; rather, he sets forth "six (6) reasons why the evidence was insufficient to sustain a conviction." Appellant's Brief at 22.

First, Appellant had a good relationship with J.G. Second, because of Appellant's long work hours, he was rarely home and the times when J.G. alleged the incidents to have occurred, Appellant was at work. Third, on the rare occasions when Appellant was home, at least one (1) other adult was always present in the home. Fourth, J.G.'s testimony that she was molested by Appellant during Appellant's birthday party is contrary to the objective, credible testimony of Cassandra Nyiri, [Mother], [Crystal] and Appellant. Fifth, since the time J.G. made the allegations through the time of trial, J.G.'s story has consistently changed. Lastly, J.G. could not describe visible markings/tattoos on Appellant's body that one would have seen if [she] saw Appellant naked.

*Id*. at 22-23. Thus, Appellant contends that "the Commonwealth failed to present sufficient credible evidence to sustain the charges against [Appellant] beyond a reasonable doubt." *Id*. at 40.

It is clear from Appellant's argument that he is challenging the credibility of J.G.'s testimony when considered in conjunction with the testimony offered by other witnesses. We are cognizant of the "fundamental principles that a verdict of guilt may not be based upon surmise or conjecture" and "courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." ***Commonwealth v. Farquharson***, 352 A.2d 545, 50 (Pa. 1976). However, "it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) (quotation omitted).

Appellant was convicted of two counts of IDSI with a child and one count of rape of a child. "A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b). "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is

less than 13 years of age." 18 Pa.C.S. § 3121(c). "Deviate sexual intercourse is defined as sexual intercourse per os or per anus between human beings. … In addition to its ordinary meaning, the term sexual intercourse is defined as intercourse per os or per anus, with some penetration however, slight." *Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003) (citations and quotations omitted).

Appellant was also convicted of aggravated indecent assault of a child. To sustain this conviction, the Commonwealth had to prove that Appellant engaged "in penetration, however slight, of the genitals or anus of a complainant with a part of [Appellant's] body … without complainant's consent … and the complainant is less than thirteen years of age." 18 Pa.C.S. 3125(a)(1) and (b). Additionally, Appellant was convicted of two counts of attempted rape of a child. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Instantly, J.G. testified in great detail about the sexual abuse perpetrated by Appellant. J.G. testified that when she was under the age of thirteen, Appellant both tried to and succeeded in putting his penis in her vagina, anus, and mouth. The Commonwealth presented the testimony about J.G.'s forensic interview, along with the interview itself, in support of J.G.'s claims. Furthermore, Cossaboom testified from her report that

Appellant "would spread [J.G.'s] vaginal area apart and touch her with his finger." N.T., 8/6/2014, at 163. Such testimony was sufficient to convict Appellant of two counts of IDSI with a child and one count of rape of child, as well as two counts of attempted rape of a child. Accordingly, based on the foregoing, Appellant's claim that the evidence was insufficient to support his convictions fails.

Appellant next claims that he should be granted a new trial because the jury's verdict was contrary to the weight of the evidence. Appellant's Brief at 40. Appellant incorporates the arguments he set forth previously to support this claim. *Id*. at 41.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, [] 744 A.2d 745, 751–52 ([Pa.] 2000). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight*

*of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, [] 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, [] 744 A.2d at 753.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (some citations and quotation marks omitted).

The trial court concluded that the "jury's determination of guilt on all counts had a reasonable basis based upon the testimony and evidence presented by the Commonwealth." Trial Court Opinion, 5/26/2015, at 9. Instantly, we cannot say that it was an abuse of discretion for the trial court, after sitting through this jury trial, not to conclude that "the jury's verdict [wa]s so contrary to the evidence as to shock one's sense of justice." *Clay*, 64 A.3d at 1045. Because the trial court did not abuse its discretion, Appellant is not entitled to a new trial in this case.

We now turn to Appellant's argument that the trial court erred by refusing to give the prompt-complaint jury instruction. Appellant's Brief at 45-53. Specifically, Appellant argues that the evidence in this case supported such an instruction because of the circumstances leading up to J.G.'s accusations.

> [I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties

and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

> It has been said that 'hue and cry follow rape like smoke follows fire.' The presumption follows that if a complaint is made promptly after the alleged offense, the victim has not had time to fabricate the story and the story is given more credibility. Conversely, if a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred.

*Commonwealth v. Snoke*, [] 300, 580 A.2d 295, 297 ([Pa.] 1990).

> The prompt complaint instruction is based upon a belief that a victim of a violent assault would reveal the assault occurred at the first available opportunity [and] the purpose of the instruction is to allow a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For example, where the victim of a sexual assault is a minor who "may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication." *Commonwealth v. Jones*, [] 672 A.2d 1353, 1357 n. 2 ([Pa. Super.] 1996). This is especially true where the perpetrator is one with authority or custodial control over the victim. Similarly, if the victim suffers from a mental disability or diminished capacity, a prompt complaint instruction may not be appropriate.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (some citations and quotations omitted).

Instantly, the trial court concluded, by relying on *Snoke*, that the prompt complaint jury instruction was inappropriate for this case. Appellant

was a father-figure to J.G., and J.G. was young, between five and eight years old, when the abuse occurred. Thus, the trial court concluded that it was "satisfied that [J.G.] may not have fully understood or appreciated the offensive nature of the conduct of [Appellant]." Trial Court Opinion, 5/26/2015, at 12. We discern no abuse of discretion in this conclusion; accordingly, Appellant is not entitled to relief on this basis.

Appellant next argues that the trial court erred in denying Appellant's motion for a mistrial where the Commonwealth asked a question that referenced Appellant being incarcerated. Appellant's Brief at 53-56. The Commonwealth cross-examined defense witness Crystal. Crystal testified that she was a friend of Appellant and Mother and that she regularly picked up J.G. from school because her daughter and J.G. were friends. During cross-examination, the following exchange occurred:

Q. [I]s [Appellant] your friend?

A. Yes. He is a friend of mine and my boyfriend's, correct.

Q. Okay. And you've known him for years?

A. Oh, yes.

Q. Okay. And, ma'am, you don't want to see him in trouble; correct?

A. No.

Q. Did you -- have you been writing him letters, even in prison?

A. I do believe I may have wrote him maybe one or two letters, I think.

Q. And what about visiting him, have you gone and --

A. I visited him once.

N.T., 8/7/2014, at 104.

Counsel for Appellant then requested a side bar and moved for a mistrial because of the Commonwealth's reference to Appellant's incarceration. The Commonwealth requested instead that the trial court offer a curative instruction. Counsel for Appellant decided that, if the trial court was going to deny the mistrial, it should not give a curative instruction and should just "move on." *Id*. at 105.

> The following standards govern our review of the denial of a motion for mistrial:
>
>> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion

- 15 -

requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Lettau*, 955 A.2d 360, 363 (Pa. Super. 2008) (internal citations and quotations omitted). The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (some quotations and citations omitted).

The trial court concluded that "[u]nder the circumstances that exist here, we do **not** believe that the passing reference that [] Appellant was in jail so unavoidably prejudiced the jury, or formed in their minds a fixed bias and hostility toward [] Appellant so that they could not weigh the evidence objectively and render a true verdict." Trial Court Opinion, 5/26/2015, at 15 (emphasis in original). As the trial court pointed out, it was counsel for Appellant who did not want a curative instruction because he did not wish to call further attention to the remark. Based on the foregoing, we agree that the trial court did not abuse its discretion in denying a mistrial. While the Commonwealth should have been more thoughtful with its question, and we do not condone its conduct, these two questions posed toward the end of a two-day jury trial did not deprive Appellant of a fair trial. Thus, Appellant is not entitled to relief.

- 16 -

Finally, Appellant attempts to challenge the discretionary aspects of his

sentence.

It is well settled that, with regard to the discretionary aspects of
sentencing, there is no automatic right to appeal.

Before [this Court may] reach the merits of [a challenge to
the discretionary aspects of a sentence], we must engage
in a four part analysis to determine: (1) whether the
appeal is timely; (2) whether Appellant preserved his
issue; (3) whether Appellant's brief includes a concise
statement of the reasons relied upon for allowance of
appeal with respect to the discretionary aspects of
sentence; and (4) whether the concise statement raises a
substantial question that the sentence is appropriate under
the sentencing code.... [I]f the appeal satisfies each of
these four requirements, we will then proceed to decide
the substantive merits of the case.

**Commonwealth v. Disalvo**, 70 A.3d 900, 902 (Pa. Super. 2013) (citations

omitted).

Appellant timely filed a notice of appeal. Appellant did not object to

his sentence during the sentencing hearing; however, he did seek

reconsideration of his sentence in his post-sentence motion. Appellant's

brief contains a Pa.R.A.P. 2119(f) concise statement. Thus, we must

determine whether he has raised a substantial question worthy of appellate

review.

The determination of whether a substantial question exists
must be made on a case-by-case basis. It is only where
an aggrieved party can articulate clear reasons why the
sentence issued by the trial court compromises the
sentencing scheme as a whole that we will find a
substantial question and review the decision of the trial

- 17 -

court. This [C]ourt has been inclined to find that a substantial question exists where the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms underlying the sentencing process.

Also, a bald allegation that a sentence is excessive does not raise a substantial question.

**Commonwealth v. Lutes**, 793 A.2d 949, 964 (Pa. Super. 2002) (citations omitted).

Appellant argues that a "claim that the sentencing court sentenced within the guidelines but failed to consider the factors set out in 42 Pa.C.S.A. § 9721(b) presents a substantial question." Appellant's Brief at 14. We disagree.

[O]rdinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor does not raise a substantial question. Specifically, [t]here is ample precedent to support a determination that [a claim that the trial court failed to consider an appellant's rehabilitative needs] fails to raise a substantial question....

Similarly, this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review. However, prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors has been less than a model of clarity and consistency. In **Commonwealth v. Dodge**, [77 A.3d 1263 (Pa. Super. 2013),] this Court determined an appellant's claim that the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" presented a substantial question. [**Id**.] at 1273.

***Commonwealth v. Caldwell***, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*) (some citations and quotation marks omitted).

In his 2119(f) statement, Appellant sets forth a bald assertion that the trial court failed to consider the factors set forth in 42 Pa.C.S. § 9721(b). That provision provides, in relevant part, that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ***Id***. Appellant does not claim that his sentence is excessive, nor does he explain how his standard range sentence violates any particular section 9721(b) factor. Accordingly, we conclude that he has failed to present this Court with a challenge worthy of appellate review. For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/3/2016